HENRY L. KIM*
CELINA M. CHO**
JOSHUA S. LIM*
KENDAL SIM*
SEOKCHAN (SEAN) KWAK*
NICHOLAS DUBOIS*
PETER MELAMED*

\* Admitted in NJ & NY
\*\* Admitted in AZ only



**KIM, CHO & LIM, LLC**
Attorneys at Law

NY Office:
163-10 Northern Blvd.
Suite 202
Flushing, NY 11358
T: 718.539.7400
F: 917.463.1590

Reply to NJ Address only

460 Bergen Boulevard, Suite 305, Palisades Park, NJ 07650
T: 201.585.7400   F: 201.585.7422

December 13, 2018

Via ECF
United States District Court
Southern District of New York
ATTN: HON. ALISON J. NATHAN, U.S.D.J.
40 Foley Square, Courtroom 906
New York, NY 10007

      RE:  JIN v. NATURAL TOFU RESTAURANT CORP., ET AL.
      CASE NO.: 1:17-CV-07302-AJN

Dear Judge Nathan:

    As Your Honor is aware, this office represents the plaintiff, Ji Mei Jin ("Plaintiff") in the above-referenced matter. This office and John C. Kim, Esq. of the Law Office of John C. Kim, the attorney for Defendants in this matter, jointly submit this letter to advise the Court that the parties have executed a settlement agreement ("Agreement") annexed hereto as **Exhibit A**. The parties respectfully request that the Court approve the terms of the parties' settlement.

## STATEMENT OF THE CASE

    By way of background, Plaintiff was a waitress working at defendant Natural Tofu Restaurant Corp. d/b/a Seoul Garden Restaurant ("Seoul Garden"), which was owned by defendants Myong Ja Koo and Man Suh Koo and operated by Patricia Koo (Seoul Garden, Myong Ja Koo, Man Suh Koo, and Patricia Koo are, collectively, "Defendants"). The Complaint alleges that, during her employment with Defendants, Plaintiff was paid on a daily basis under the applicable minimum wage and without any overtime premium or spread-of-hours premium. Plaintiff further alleges that Defendants took "tip credits" from Plaintiff's wages without providing required notices. Plaintiff has brought claims under the Fair Labor Standards Act, the New York Labor Law, and the regulations thereunder. For each violation, Plaintiff alleges that all Defendants, including the individual Defendants, are liable to Plaintiff as "employers" as defined in these statutes. In addition to the wages she claims she was owed, Plaintiff seeks statutory damages pursuant to the New York Labor Law §§ 198-b and 198-d.

    Defendants denies the allegations in their pleadings. Shortly after this action was commenced, Defendants Myong Ja Koo and Man Suh Koo filed for bankruptcy in the Central District of California. As such, this case was stayed as to those individual Defendants pursuant to Your Honor's order of April 18, 2018. This office contested the bankruptcy petition, leading to a lifting of the automatic stay on September 5, 2018.

## SETTLEMENT NEGOTIATIONS AND TERMS

The parties were substantially assisted in their settlement negotiations through the availability of information obtained in discovery in a closely related case in the United States District Court for the Eastern District of New York, Wu v. Natural Tofu Restaurant Corp., Case No.: 1:16-cv-03613 (the "Eastern District Action"), as well as the results achieved in that action. The plaintiffs in that action, all former co-workers of Plaintiff, brought claims that were substantially identical, factually and legally, to those brought in this case. As in the present case, the plaintiffs in the Eastern District Action have alleged that they were paid under the applicable minimum wage and without any overtime or spread-of-hours payments and that Defendants took "tip credits" from the plaintiffs' wages without providing the required notices. As in this case, the plaintiffs in the Eastern District Action alleged violations under the Fair Labor Standards Act, the New York Labor Law, and the regulations thereunder and sought damages pursuant to the New York Labor Law §§ 198-b and 198-d. The parties subsequently conducted extensive discovery. By the time this action was commenced, the Eastern District Action was already at the summary judgment stage. Following the commencement of this suit, but before the bankruptcy petition of Defendants Myong Ja Koo and Man Suh Koo, the plaintiffs in the Eastern District Action filed a motion for summary judgment, which they won as to the liabilities of Defendant Man Suh Koo and the corporate Defendant. In addition, counsel for the parties in that action are identical to counsel in this action.

The parties continued to engage in settlement discussions, including during the bankruptcy proceeding. Both in this action and in the Eastern District Action, Defendants were represented by, in chronological order: Andrew Smyth, Esq., who acted as the individual Defendants' bankruptcy attorney; Diane H. Lee, Esq.; and most recently John C. Kim, Esq. Because of the factual similarities between this action and the Eastern District Action, the settlement discussions in the two actions were concurrent to ensure that the respective plaintiffs received fair treatment in light of facts individual to each plaintiff such as wage and length of employment, and the Fairness Letters in the two actions are substantially simultaneous. In addition, the plaintiffs in each action have been fully apprised of the settlement recovery of the plaintiff or plaintiffs in the other, should the courts approve the respective settlements. Through these coordinated efforts, the plaintiffs in the two actions were able to achieve a global settlement.

Based on the facts concerning Defendants' employment practices gathered in the Eastern District Action, Plaintiff made a settlement demand for $100,000.[1] This number was calculated and adjusted based on the order on summary judgment of Judge Allyne R. Ross, the district court judge in the Eastern District Action, as well as the records available to Plaintiff. Plaintiff contends that she would have been entitled to an amount in excess of this demand and that the demand constituted a substantial discount in view of the individual Defendants' likely inability to pay. The corporate Defendant is no longer in business.

---

[1] The parties engaged in a global settlement to resolve both this matter and another matter pending in the Eastern District of New York, Case No.: 1:16-cv-03613. The total agreed-upon settlement is for $300,000. Approximately $100,000 was allocated for Plaintiff in this action.

Defendants rejected this offer. Following intense discussions that consisted of offers and counteroffers, the parties reached a settlement in principle that consisted of payments made out as follows:

>Plaintiff would receive $65,223.37;

>Plaintiff's counsel would receive $32,611.68 in counsel fees and $2,164.95 for costs.

Even for this reduced settlement figure, Defendants maintain that they lack sufficient cash on hand to make the payments. As such, the individual Defendants agreed to sell their residential property to generate sufficient funds. Under the terms of the settlement, the sales proceeds of the residential property would be deposited into Defense counsel's trust account. Any needed portions of those proceeds would then be paid into the trust account of Plaintiff's counsel in one lump sum. Plaintiff's counsel would be solely responsible for ensuring Plaintiff's receipt of her settlement payment.

### THE TERMS OF SETTLEMENT ARE FAIR AND REASONABLE

"Generally, there is a strong presumption in favor of finding a settlement fair, as the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement." Lliguichuzhca v. Cinema 60, LLC, 948 F.Supp.2d 362, 365 (S.D.N.Y. 2013) (internal quotations omitted). "In considering whether a settlement is fair and reasonable, the principle question is 'whether the agreement reflects a reasonably compromise of disputed issues rather than a mere waiver of statutory rights brought about an employer's overreaching.'" Id. (quoting Le v. SITA Info. Networking Computing USA, Inc., No. 07 Civ. 86 (JS/MLO), 2008 WL 724155, at *1 (E.D.N.Y. Mar. 13, 2008)) (internal marks omitted). In doing so, courts in the Second Circuit consider "(1) the Plaintiff's range of possible recovery; (2) the extent to which 'the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses'; (3) the seriousness of the litigation risks faced by the parties; (4) whether 'the settlement agreement is the product of arm's-length bargaining between experienced counsel'; and (5) the possibility of fraud or collusion." Wolinsky v. Scholastic, Inc., 900 F.Supp.2d 332, 335 (S.D.N.Y. 2012) (citing Alleyne v. Time Moving & Storage, Inc., 264 F.R.D. 41, 54 (E.D.N.Y. 2010) (in the context of a FLSA class action)).

In view of Defendants' petition for bankruptcy, the potential for Plaintiff's recovery in excess of the settlement figure is low. Should the parties try this case, Plaintiff would be burdened with further expenses incurred in this Court and in bankruptcy court. Although Plaintiff believes the likelihood of a greater recovery at trial is very high, the burdens and risks associated with enforcement outweigh the benefits of trying this case. Defendants also wish to avoid the costs and burdens associated with a trial. As such, the parties are advancing their mutual interest by settling this matter according to the terms of the Agreement.

Further, the parties have engaged in substantial settlement discussions under representation by their respective counsel. Both parties agree that the settlement agreement is the product of arm's-length bargaining between their respective counsel. Finally, the possibility of fraud

associated with this settlement is low; in fact, the parties have included a disclosure provision in their settlement agreement to enhance transparency and ensure that Defendants act in good faith.

Considering the above factors, the Agreement here is fair to Plaintiff and the terms are reasonable. Plaintiff has made an informed decision to settle this matter and to avoid the burdens, costs, and risks associated with trial and collection.

The parties are further assured of fairness through the guidance of United States Magistrate Judge Steven Tiscione of the Eastern District of New York, who has presided over the Eastern District Action and who has provided invaluable counsel during the telephonic and in person settlement conferences held in that action. It was through settlement conferences conducted before Judge Tiscione that a global settlement including Plaintiff was reached.

### PLAINTIFF'S ATTORNEYS' FEES ARE FAIR AND REASONABLE

As set forth above, Plaintiff's counsel will receive a total of $34,776.63. Of that total, $32,611.68 is attributed to Plaintiff's attorneys' fees and $2,164.95 is attributed to the costs[2] incurred in this action. Such costs include the expenses incurred in traveling to California to contest Defendants' bankruptcy petition and the hiring of local counsel to assist with the same. Plaintiff's attorneys' fees represent one-third of the net recovery, as provided for in Plaintiff's retainer agreement.

The one-third of net recovery provided to Plaintiff's counsel is fair, reasonable, and consistent with the range of fees typically awarded in the Second Circuit. The district courts in this Circuit may use either of two distinct methods to determine fairness: the percentage method or the lodestar-type method. See Alleyne v. Time Moving & Storage Inc., 264 F.R.D. 41, 58 (E.D.N.Y. 2010). "While there is a strong presumption that the 'lodestar' amount—that is, the number of attorney hours reasonably expended times a reasonable hourly rate—represents a reasonable fee, the court may adjust the fee award upward or downward based on other considerations." Wolinsky, 900 F. Supp. 2d at 336. "In this Circuit, courts typically approve attorney's fees that range between 30 and 33[-1/3 percent]." Thornhill v. CVS Pharmacy, Inc., No. 13 Civ. 5507 (JMF), 2014 WL 1100135, at *3 (S.D.N.Y. Mar. 20, 2014). As such, under the percentage method, the attorneys' fees provided to Plaintiff's counsel are fair and reasonable.

Under the lodestar method, as shown in the invoices annexed hereto as **Exhibit B**, the hourly billing for this matter totals $ 24,201.32. The hourly rates of the attorneys who performed the billed work are reasonable based on their brief biography:

Joshua Lim, Esq., represented by the initial "JL" on the invoices, is a partner at Kim, Cho & Lim, LLC. He has been practicing law since 2004, after having graduated from the University of Minnesota Law School. Mr. Lim specializes in commercial and labor law litigation. Throughout his practice, Mr. Lim has represented both plaintiffs and defendants in labor law actions. Mr. Lim is the recipient of multiple awards, including the "Top 40 Under 40" award, the "Top Attorneys

---

[2] This office represents three other plaintiffs in the Eastern District of New York, Case No.: 1:16-cv-03613. The costs attribute to either this action or the Eastern District Action has been allocated as such. The costs incurred for both cases has been allocated in one-to-three ratio, based on the number of plaintiffs in each action.

New Jersey Outstanding Young Lawyers" award, the "Super Lawyers Rising Stars" award, and the "Top 100 Lawyers" award.

Kendal Sim, Esq., represented by the initial "KS" on the invoices, is an associate at Kim, Cho & Lim, LLC. He has been practicing law since 2014. Working under the direction of Mr. Joshua Lim since the beginning of his practice, Mr. Sim possesses extensive expertise in litigating and negotiating labor law disputes.

Seokchan Kwak, Esq., represented by the initial "SK" on the invoices, is an associate at Kim, Cho & Lim, LLC. Mr. Kwak joined Kim, Cho & Lim, LLC in 2016 as a law clerk and has been involved in labor law litigation since then. Mr. Kwak was admitted to practice law in July 2017. He provided his services under the close supervision of Mr. Joshua Lim, and is now competent to run many labor law actions and negotiations on his own. Mr. Kwak travelled to California to contest Defendants' bankruptcy proceeding as discussed above.

Ms. Jennifer Park, represented by the initial "JP" on the invoices, is a paralegal at Kim, Cho & Lim, LLC. Ms. Park has worked as a paralegal for six years. She recently graduated from law school and has taken the bar exam.

Here, the court should adjust the fee award upward from this lodestar in view of the vigorous litigation conducted by Plaintiff's counsel in the Eastern District Action. Plaintiff's counsel took this case and the Eastern District Action on a contingency fee basis, and thus counsel bore the risk of receiving no recovery. But for the extensive discovery and results achieved in that action, the present litigation would have been prolonged, and Plaintiff's bargaining power during settlement negotiations would have been substantially weakened. The persistent efforts of Plaintiff's counsel had already unveiled Defendants' employment practices, and Plaintiff was able to accurately estimate her damages during the pleadings stage of this litigation.[3] Given the contingency fee and attendant risks of nonpayment, as well as the efforts involved and results achieved, a lodestar multiplier is appropriate. See, e.g., In re. Platinum and Palladium Commodities Litig., 10 Civ. 3617, 2015 WL 4560206, *3 (S.D.N.Y. July 7, 2015) ("Courts applying the lodestar method generally apply a multiplier to take into account the contingent nature of the fee, the risks of non-payment, the quality of representation, and the results achieved."); Pucciarelli v. Lakeview Cars, Inc., 16 Civ. 4751 (RRM) (RER), 2017 WL 2778029, *2 (E.D.N.Y. June 26, 2017) (involving contingency fee arrangement and citing cases using lodestar multipliers of approximately 2).

Further, as noted above, Plaintiff's settlement terms are pursuant to a global settlement reached at settlement conferences conducted before Judge Tiscione in the Eastern District. As such, a significant portion of the work performed in the Eastern District Action is allocable to this action. In this regard, although the attorneys' fees sought in this action are greater than the fees billed on an hourly basis, the **total** fees being sought among the two actions through settlement are **significantly lower** than the total fees billed in the two actions, and the attorneys' fees sought in

---

[3] At the time of filing the Complaint in this action, Plaintiff's counsel had completed a year-long discovery and was anticipating a motion for summary judgment against the Defendants in the EDNY matter.

this action evenly allocate the fees that the respective plaintiffs would incur.[4] Like the plaintiffs in the Eastern District Action, Plaintiff agreed to a 33% fee signing the retainer agreement before the commencement of this action, and thus the allocation of the fees accords with the parties' expectations. Thus an upward adjustment of the lodestar sum to one-third of net recovery is fair and reasonable.

For the foregoing reasons, the requested attorneys' fees and costs, which is one-third of Plaintiff's net recovery, are reasonable under the circumstances.

## CONCLUSION

Plaintiff and Defendants have been represented by their respective counsel throughout this lawsuit. Under their counsel's guidance and advice, the parties have approved of and agreed to the terms of the settlement. Plaintiff's interests have thus been adequately safeguarded.

For the foregoing reasons, the parties believe the terms of the settlement are fair and reasonable and that this Court should approve of the same. A stipulation of dismissal will be filed upon Your Honor's approval of the parties' settlement.

Thank you for the Court's consideration in this matter.

Respectfully submitted,

Seokchan Kwak, Esq.
Kim, Cho & Lim, LLC
Attorneys for Plaintiff

cc: John C. Kim, Esq., attorney for Defendants – via ECF

---

[4] Plaintiffs' counsel in the two cases billed a total of just under $150,000, whereas they have sought approximately $97,000 through the settlement of the two cases. In both actions, counsel for the plaintiffs has sought a 33% fee. By seeking a 33% fee in **both** cases, plaintiffs' counsel have attempted to ensure fairness to their clients, who otherwise would need to pay unevenly depending on when they commenced litigation.